UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CODY R.D. WILLARD,<br><br>                 Plaintiff,<br><br>    v.<br><br>HENRY ATENCIO; ALBERTO RAMIREZ; SGT. HOWARD; CPL. BAERLOCHER; SGT. BALL; CPL. NORTON; OFFICER NEWCOMB; OFFICER DURKSON[1]; IDAHO BOARD OF CORRECTION;<br><br>                 Defendants. | Case No. 1:17-cv-00274-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff, a prisoner in the custody of the Idaho Department of Correction ("IDOC") and currently incarcerated at the Idaho Maximum Security Institution ("IMSI"), is proceeding pro se and in forma pauperis in this civil rights action. On August 29, 2017, United States Magistrate Judge Candy W. Dale reviewed Plaintiff's Complaint, pursuant to 28 U.S.C. §§ 1915 and 1915A, and determined that Plaintiff had stated a plausible Eighth Amendment claim against Defendant Joshua Duerksen based on Duerksen's alleged failure to protect Plaintiff from an attack by other inmates on May 25, 2017. *Initial Review Order*, Dkt. 7, at 7. Judge Dale determined that Plaintiff had not stated any other claim for relief against any other Defendant. *Id*. at 6-10.

---

[1] Plaintiff sued this Defendant under the name "Officer Durkson," but the correct spelling of this Defendant's last name is actually "Duerksen." *See* Dkt. 10.

MEMORANDUM DECISION AND ORDER - 1

This action has since been reassigned to the undersigned judge. Now pending is Defendant Duerksen's Motion for Summary Judgment, in which Defendant argues that Plaintiff did not properly exhaust available administrative remedies. Having fully reviewed the record, the Court concludes that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1. Accordingly, the Court enters the following Order granting Defendant's Motion and dismissing this case without prejudice.

**1.      Review of Judge Dale's Initial Review Order**

This Court has independently reviewed the Complaint and Judge Dale's Initial Review Order and, although that review has been de novo, agrees with Judge Dale's analysis and conclusion that the only plausible claim asserted in the Complaint is an Eighth Amendment claim against Defendant Duerksen arising from the May 25, 2017 attack. The Court now turns to Defendant's Motion for Summary Judgment on that claim.

**2.      Defendant's Motion for Summary Judgment**

   *A.      Standard of Law Governing Summary Judgment*

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, a case will survive summary judgment only if there is a *genuine* dispute as to a *material* fact. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The

existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact should be "presented in a form that would be admissible in evidence," or it may be subject to being stricken. Fed. R. Civ. P. 56(c)(2). In determining admissibility for summary judgment purposes, it is the content of the evidence, rather than its form, that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). Summary judgment for the moving party should be granted "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Pro se prisoners are exempted "from *strict* compliance with the summary judgment rules," but not "from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018). In opposing a motion for summary judgment, a pro se prisoner still must submit at least "*some* competent evidence," such as a "declaration, affidavit, [or] authenticated document," to support his allegations or to dispute the moving party's allegations. *Id.* at 873 (emphasis added) (upholding grant of summary judgment against pro se inmate because the "only statements supporting [plaintiff's] ... argument are in his unsworn district court responses to the defendants' motion for summary judgment and to the district court's show-cause order").

### B. Standards of Law Governing the Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[2] prisoners are required to exhaust all available administrative remedies within the prison system before they can include the claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *see also Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (holding that a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548

---

[2] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

MEMORANDUM DECISION AND ORDER - 5

U.S. 81, 90-91 (2006). However, an inmate need only exhaust those remedies that are "available"—that is, an inmate must exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Proper exhaustion is required "even where it may appear futile." *Nunez v. Duncan*, 591 F.3d 1217, 1231 (9th Cir. 2010) (quoting *Booth*, 532 U.S. at 741). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted).

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id*. at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73.

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F. 3d 1162.

### C. Because Plaintiff Did Not Exhaust Available Administrative Remedies, Defendant Duerksen Is Entitled to Summary Judgment

i. Undisputed Facts

Plaintiff did not file a response to Defendant's Motion for Summary Judgment. Therefore, the Court considers the facts as presented by Defendant to be undisputed. *See* Fed. R. Civ. P. 56(e)(2).

IDOC has established a prisoner grievance process, which is attached as Exhibit B to the Declaration of Adriana Pitzer, IMSI's grievance coordinator ("Pitzer Decl."). The grievance process consists of three stages. *Pizter Decl.* ¶ 5. First, any inmate with a concern is required to seek an informal resolution of the matter by completing an offender concern form "addressed to the staff member most capable of responding to and, if appropriate, resolving the issue." *Id*. ¶ 6. If the issue cannot be resolved informally through the use of a concern form, the inmate must then file a grievance form. *Id*. ¶ 7. A grievance form must be submitted within 30 days of the incident giving rise to the grievance.

When submitting a grievance form, the inmate must include "specific information including the nature of the complaint, dates, places, and names." *Id.* ¶ 8. The inmate must suggest a solution to the problem, and only one issue may be raised per grievance. *Id.*

The staff member must respond to a properly-completed grievance within 10 days. The grievance coordinator then forwards the grievance, including the staff member's response, to a "'reviewing authority,' who is usually a deputy warden." *Id.* The reviewing authority then grants, denies, or modifies the solution suggested by the inmate. The

grievance coordinator returns the grievance, including the reviewing authority's response, to the inmate.

If a grievance is not completed, is filled out incorrectly, or otherwise does not comply with the grievance policy—such as if the grievance form is untimely or raises more than one issue—the grievance is returned to the inmate without action, along with a description of the grievance's deficiencies. *Ex. B to Pizter Decl.* at 9-11, Dkt. 12-3 at 17-19. The inmate may then submit a corrected grievance. *Id.*

If the inmate is not satisfied with the reviewing authority's response to the grievance, the inmate may file a grievance appeal within 14 days. *Pitzer Decl.* ¶ 9. The grievance coordinator forwards the appeal to the "'appellate authority, who is typically the facility head." *Id.* ¶ 10. The appellate authority responds to the grievance appeal and sends it back to the grievance coordinator, who then returns the appeal response to the inmate.

The grievance process is exhausted only upon an inmate's completion of these three steps: concern form, grievance form, and grievance appeal. *Id.* ¶¶ 10-11. An inmate "who does not file a Grievance Form, files a Grievance outside the time limit, or never appeals the response to such Grievance, does not complete the IDOC grievance process." *Id.* ¶ 11.

Here, Plaintiff filed a grievance that complained of two issues: an attack Plaintiff suffered on April 5, 2017, as well as the May 25, 2017 attack.[3] Because the grievance

---

[3] Plaintiff's Complaint does not state a plausible Eighth Amendment claim based on the April 5, 2017 attack. *See infra* at 2; Dkt. 7 at 1-2, 4-7.

MEMORANDUM DECISION AND ORDER - 9

was untimely as to the earlier attack, the grievance coordinator returned the grievance to Plaintiff without action; Plaintiff was informed that "only incidents within the last 30 days are able to be grieved." *Ex. C & D to Pitzer Decl.*

Plaintiff later resubmitted his grievance, once again complaining of both the April 5 and May 25 attacks. This grievance was also returned without action, with a notice informing Plaintiff that the grievance did not comply with policy because it raised more than one issue. Plaintiff was also informed, again, that the grievance was untimely as to the earlier incident: "You can grieve the latter incident if you wish, but the time has elapsed for the incident on 4-5-17." *Ex. E to Pitzer Decl.* Plaintiff did not resubmit his grievance as to the May 25 attack.

    ii.    <u>Analysis</u>

Plaintiff's first two grievances did not comply with IDOC's grievance policy because they were untimely as to the first attack and raised more than one issue per grievance. Plaintiff was notified that he could resubmit a corrected grievance as to the second attack, but he failed to do so.

Therefore, Defendant has met his initial burden of establishing that Plaintiff did not exhaust the administrative remedies available to him, and the burden to raise a genuine factual dispute shifts to Plaintiff. Because Plaintiff has not met that burden, Defendant Duerksen is entitled to judgment as a matter of law. Therefore, the Court will grant the Motion for Summary Judgment.

# ORDER

**IT IS ORDERED:**

1. Plaintiff's Complaint states only a single plausible claim—an Eighth Amendment claim against Defendant Duerksen arising from the May 25, 2017 attack. Therefore, all other claims against all other Defendants are DISMISSED without prejudice.

2. Because Plaintiff failed to exhaust administrative remedies with respect to his remaining claim, Defendant's Duerksen's Motion for Summary Judgment (Dkt. 12) is GRANTED, and this entire action is DISMISSED without prejudice.

DATED: July 3, 2018

_____
David C. Nye
U.S. District Court Judge